IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SCOTT PETERS,                          )
                                       )
                Plaintiff,             )
                                       )
vs.                                    )     Case No. 3:16-CV-00382-MAB
                                       )
KIMBERLY BUTLER, ET AL.,               )
                                       )
                Defendants.            )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court is Plaintiff Scott Peters' motion for sanctions (Doc. 299) and Defendants John Baldwin, Chad Beltz, Kimberly Butler, Keith Gibson, Donald Lindenberg, Matthew Mason, Carl McFarland, Allan Ripley, Jeffrey Rolland, Virgil Smith, and Bill Westfall's response (Doc. 302). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, on March 28, 2016 in the Central District of Illinois for his treatment while housed at Menard Correctional Center ("Menard"), operated by the Illinois Department of Corrections ("IDOC") (Doc. 1). The matter was transferred to the Southern District of Illinois on April 5, 2016 (Doc. 8), where the Court conducted a threshold review pursuant to 28 U.S.C. § 1915A, allowing Plaintiff to proceed on four claims against Defendants (Doc. 11).

The second amended scheduling order was entered in this matter on August 5, 2019 (Doc. 261) and modified on October 3, 2019, detailing that Defendants' expert disclosures were due by January 10, 2020, with their expert depositions and discovery, as a whole, due by February 7, 2020 (Doc. 278). The operative complaint, Plaintiff's fourth amended complaint, was filed on October 30, 2019 after Plaintiff's current counsel was appointed (Doc. 281).

I.    Plaintiff's Complaint

Plaintiff's operative complaint makes the following allegations. Plaintiff is a disabled veteran who has not been able to ambulate freely without the aid of an assistive device since 2006 due to military injuries to his spine, pelvis, hips, legs, and internal organs (Doc. 281, p. 2). Plaintiff takes a series of medications for these injuries and pain, but alleges that on the day he was transferred from Statesville Correctional Center ("Statesville") to Menard (March 11, 2016), these medications were terminated (*Id.* at p. 3). That day, Plaintiff was transferred on two buses that were not equipped to transfer individuals with physical impairments like Plaintiff's. As such, Plaintiff had to be physically carried by his shackles. *Id.* For the first part of his transfer, Defendant Gibson was allegedly involved. *Id.*

When Plaintiff arrived at Pinckneyville Correctional Center ("Pinckneyville"), he was placed in a segregation cell for three to five hours without assistive devices. The Defendants involved in this part of the trip were Defendants Smith, Mason, Beltz, McFarland, and Rolland (*Id.* at p. 4).

When Plaintiff arrived at Menard the same day, he was carried off of the bus by his shackles and placed in a small holding cell, where he had his jumpsuit forcibly removed and then lay naked on the floor for approximately thirty minutes. *Id.* Eventually, Plaintiff was provided with a new jumpsuit and carried again by his shackles to a segregation cell, where he spent approximately ten days, during which he was unable to stand without access to an assistive device. *Id.*

Plaintiff was moved from segregation on or around March 21, 2016, carried again by his shackles until it became too tiresome and a correctional officer finally gave him a wheelchair (*Id.* at p. 5). He was placed in what he described to be a "property room," where he was placed on the floor and tormented, including having a plastic bag placed over his head to simulate suffocation. *Id.* He was then taken to his new cell house and dumped from his wheelchair to the floor near the entrance, where he then had to crawl 75 yards to his new cell. The Defendants involved in the acts alleged at Menard include Ripley, Lindenberg, Butler, and Westfall. *Id.*

Plaintiff brings claims against Defendant Trost, as he provided healthcare services to Plaintiff at Menard and Defendant Baldwin, as he oversaw the entire IDOC prison system and created and enacted all policies and procedures (*Id.* at p. 2).[1]

Plaintiff brings five counts, including (1) a Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12101-12213) claim against Defendant Baldwin for discriminating against Plaintiff on the basis of disability by denying him necessary

---

[1] Defendant Trost is not involved in Plaintiff's Motion for Sanctions, as Plaintiff does not seek sanctions against Defendant Trost.

accommodations; (2) a cruel and unusual punishment claim in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution against Defendant Baldwin as Director of the IDOC; (3) a cruel and unusual punishment claim in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution against Defendants Smith, Mason, Beltz, McFarland, Rolland, Westfall, Ripley, and Lindenberg for abuse, mistreatment, and an excessive amount of force used against Plaintiff; (4) a cruel and unusual punishment claim for failure to intervene, in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution, against Defendant Smith, Mason, Beltz, McFarland, Rolland, Westfall, Ripley, and Lindenberg; and (5) a cruel and unusual punishment claim in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution against Defendants Smith, Mason, Beltz, McFarland, Rolland, Westfall, Ripley, and Lindenberg for ignoring the aforementioned alleged violative conduct (Doc. 281, pp. 5-11).

II.    Plaintiff's Motion for Sanctions

On May 22, 2020, Plaintiff filed his motion for sanctions (Doc. 299). Defendants filed a response on June 26, 2020 (Doc. 302), and Plaintiff filed a reply brief on July 6, 2020 (Doc. 303). The Court held a hearing on the motion for sanctions on October 22, 2020, where the Court heard oral argument from the parties (Docs. 310; 312).

Plaintiff's motion for sanctions outlines that Defendants committed three overarching discovery violations, abusing the discovery process, by: (1) untimely producing material evidence in violation of Rule 26(a) and 26(e); (2) improperly redacting material information; and (3) improperly disclosing Defendants' expert as a non-retained expert, thereby failing to provide a written expert report as required by Rule 26(a)(2).

Plaintiff contends these discovery violations are so severe, and the cost and effort to rehabilitate the resulting harm would be too great at this late stage in the case's progression, that the appropriate response would be for the Court to strike Defendants' pleadings and enter judgment in Plaintiff's favor (Doc. 299, p. 2). In the alternative, Plaintiff requests Rule 37 sanctions. The alleged violations can fairly be split into two categories:

A.  Document Production Issue

Defendants produced initial disclosures on August 24, 2018 (Doc. 299-1). The Initial Disclosures indicated IDOC Defendants intended to rely on relevant "incident reports," which Defendants attached (*Id.*). The production did not include an incident report regarding Plaintiff's March 11, 2016 transfer.

On October 3, 2019, the Court entered the current discovery schedule, which required the following deadlines: (1) All parties to respond to outstanding written discovery by October 25, 2019 (an interim deadline agreed-to by the parties); (2) Defendants' expert disclosure by January 10, 2020; (3) Deposition of Defendants' experts by February 7, 2020; and (4) Discovery to be completed by February 7, 2020 (Docs. 299-2; 278). All parties supplemented written discovery and document productions on October 25, 2019. Plaintiff disclosed his sole expert witness, who was then deposed by Defendants on December 19, 2019 (Doc. 299-3, pp. 1-5).

Discovery was set to close on February 7, 2020. Beginning on January 17 through January 31, 2020, Defendants served three supplemental document productions:

i.      The March 11, 2016 Incident Report

On January 17, 2020, IDOC Defendants produced, for the first time, the March 11, 2016 incident report that directly relates to the day, events, and claims at issue, including Plaintiff's contested transfer from Pinckneyville to Menard, and Defendants' reasons for holding Plaintiff in segregation upon his arrival at Menard. Plaintiff contends his case strategy, up until this point, had relied upon the absence of such an incident report (Doc. 299-5). Listed on this incident report are two IDOC staff members who are not currently Defendants: Correctional Officer Bennett and Lieutenant Mayer (Doc. 299-5).

ii.      The Unredacted Transfer Roster and Classification Report

On January 31, 2020, IDOC Defendants produced, for the first time, an unredacted Transfer Roster identifying the six IDOC employees[2] who transferred Plaintiff from Pinckneyville to Menard (Doc. 299-6). As Plaintiff's claims involve his transfer from Pinckneyville to Menard, Plaintiff contends these six IDOC employees are material witnesses and potential defendants. Also produced with the unredacted report was a classification report, which contained documents Plaintiff contends are directly related to the claims covering a time period from July 1, 2015 to March 22, 2018 (Doc. 299-7). Plaintiff contends this report contains redactions for sections, such as "Critical Needs/Concerns" and "Reported Medical/Mental Issues," that are materially relevant to Plaintiff's claims (Doc. 299, p. 4).

---

[2] Although the handwriting is difficult to decipher, it appears those six IDOC staff members are Gutreuter, Weesen, Brown, Bradley, Phelps, and Steinmetz, none of whom are listed Defendants currently (Doc. 299-6).

### iii.    The Cell House Transfer Log

Also on January 31, 2020, IDOC Defendants produced for the first time a cell house transfer log showing that Plaintiff was transferred to three different cells within eleven days of his arrival at Menard. This log, like the aforementioned report, was heavily redacted and no explanations were given for the redactions (Doc. 299-9).

## B.   Expert Witness Issue

On January 17, 2020 (after Plaintiff agreed to an extension), IDOC Defendants disclosed IDOC employee Patrick Keane ("Keane") as their sole expert witness. Defendants disclosed Mr. Keane as a non-retained expert witness and, accordingly, did not provide a written expert report as required by Federal Rule of Civil Procedure 26(a)(2) (Doc. 299-4). Plaintiff deposed Mr. Keane on February 3, 2020 and subsequently challenged the IDOC Defendants' failure to disclose him as a retained expert and provide an expert report.

## LEGAL STANDARD

The Federal Rules of Civil Procedure state, "[i]f a party fails to provide information or identify witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified or is harmless*." FED. R. CIV. P. 37(c). Ultimately, " '[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court.' " *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir.2003) (quoting *Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir.1996)). Even so, district courts are not required to make explicit findings

regarding the existence of a substantial justification or the alleged harmlessness of a failure to disclose. *Id.* (*citing to  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir.1999).

The Seventh Circuit Court of Appeals has noted a number of factors that should guide a court's discretion when considering the impact of a Rule 26(a) violation, including: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Andrews v. CBOCS W., Inc.,* Case No. 09-cv-1025-WDS-SCW, 2011 WL 722606, at *1 (S.D. Ill. Feb. 23, 2011), *quoting Caterpillar*, 324 F.3d at 857.

## DISCUSSION

Plaintiff's motion for sanctions covers alleged violations of Rule 26(a) and 26(e), which Plaintiff argues can only be cured through the imposition of sanctions in accordance with Rule 37. The alleged violations can be separated into two categories: (1) issues with document production, including documents produced at the end of discovery and overly-redacted documents (collectively referred to as "Documents"); and (2) an improperly disclosed expert.

I.   Document Production Issues

Under Rule 26(a)(1), the parties were required to initially disclose, without awaiting formal discovery requests, the names of persons likely to have discoverable information relevant to the factual dispute as well as the nature and location of potentially relevant documents and records. *See* FED. R. CIV. P. 26(a)(1). Throughout this

case, Rule 26(e), in turn, has required the parties to update their initial disclosures and discovery responses "at appropriate intervals" upon learning that such disclosures were "in some material respect … incomplete or incorrect and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1), (2). Additionally, Rule 26 outlines that when an attorney signs a disclosure, they are certifying that the disclosure is complete and correct, and formed *after a reasonable inquiry*. FED. R. CIV. P. 26(g)(1)(A). Failure to timely supplement can result in a party being subjected to sanctions under Rule 37(c). *See* FED. R. CIV. P. 37(c).

Plaintiff contends that the IDOC Defendants' failure to timely disclose material documents has severely prejudiced Plaintiff's case, which can only be cured through sanctions. Specifically, Plaintiff argues that the withheld Documents contain information directly related to Plaintiff's claims and the supporting facts for those claims, including, but not limited to: (1) the identity of six new material witnesses and potential defendants; (2) relevant events occurring on the exact day at issue; (3) Plaintiff's March 11, 2016 transfer from Pinckneyville to Menard; (4) Defendants' justifications for holding Plaintiff in a segregation cell; and (5) Defendants' knowledge of Plaintiff's inability to walk without assistance and his need for ADA accommodations (Doc. 299, p. 7, citing to Doc. 299-12).

Plaintiff further explains that as the result of these Documents being produced so late, it would take extensive measures to rehabilitate his case (Doc. 299, p. 7). Plaintiff would have to (1) depose the six new material witnesses regarding information gained

from the six individuals and new documents; (2) re-depose other witnesses regarding information gained from the six individuals and new documents; (3) re-depose all witnesses who previously testified about the March 11, 2016 transfer; (4) re-depose Defendant Kim Butler as she is the Officer who reviewed and signed the Incident Report; (5) work extensively with Plaintiff's expert, incurring additional fees, to update her report to address newly produced material information; (6) obtain and review a complete privilege log from Defendants and conduct related discovery; (7) restructure the pleadings and trial strategy to account for six new material witnesses and/or party defendants; and (8) conduct additional unknown discovery that becomes necessary upon completion of this anticipated additional discovery (Doc. 299, p. 7).

In turn, since Plaintiff contends discovery will have to be re-opened and "generally reconducted," it follows that this will cause a significant delay in the trial setting and the parties will incur substantial additional costs (*Id.* at p. 8). Plaintiff further argues that the IDOC Defendants numerous discovery violations shows an "extended pattern of delay and obfuscation," in that the IDOC Defendants withheld material evidence "until the moment at which disclosure would inflict maximum disruption to Plaintiffs' case." (*Id.* at pp. 8-9).

The IDOC Defendants assert they did not violate discovery rules as the Documents at issue were produced prior to the discovery deadline and none of the provisions in Rule 37 apply to the current situation (Doc. 302, p. 2). The IDOC Defendants argue that Plaintiff did not have to file a motion or seek to compel this information; rather, the IDOC Defendants turned over the missing Documents voluntarily and in accordance with Rule

26(e), which requires a party to supplement or correct a disclosure or response in a timely manner (Doc. 302, citing FED. R. CIV. P. 26(e)). Discovery of these missing Documents occurred after IDOC Defendants' current attorney conducted a reasonable inquiry in order to make a complete and correct disclosure (*Id.*, citing FED. R. CIV. P. 26(g)). Ultimately, if the Court decides to issue sanctions, the IDOC Defendants argue that any potential prejudice to Plaintiff by these late disclosures can be cured by allowing Plaintiff additional time to conduct discovery (Doc. 302, p. 5).

To determine whether Rule 37 sanctions are appropriate, the Court must first determine whether a discovery violation occurred. The Court first turns to the disclosure of the March 11, 2016 Incident Report, the Cell House Transfer Log, and the Unredacted Transfer Roster. The content of these documents show, for the first time, details about Plaintiff's transfer and time spent in various placements within Menard when he first arrived, which are central to Plaintiff's case. There is no question that these documents directly relate to the issues of this case and, as Plaintiff argues, potentially add an additional six defendants or, at least, six key witnesses, as an additional six IDOC staff members are listed as being present on the day of Plaintiff's transfer (Docs. 299-5; 299-6). The IDOC Defendants did voluntarily supplement the record on January 17 and January 31, 2020, twenty-one and seven days before the end of discovery respectively, but a primary purpose for Rule 26 disclosures is to "to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Andrews*, 2011 WL 722606, at *3 (citing *U.S. ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D.Cal.2002)); *see also Federal Deposit Ins. Corp. v. Cherry, Bekaert &*

*Holland*, 131 F.R.D. 202, 204 (M.D.Fla.1990) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir.1978) ("The aim of liberal discovery rules is to make trial 'less a game of blindman's bluff and more a fair contest.'")).

While the IDOC Defendants did produce the documents just prior to the close of overall discovery, their actions subverted the primary intent of Rule 26 disclosures and discovery, in general, which is to remove surprise from trial preparation. Written discovery closed on October 25, 2019, with discovery as a whole closing on February 7, 2020 (Doc. 299-2, 278). These documents were disclosed to Plaintiff twenty-one and seven days before the end of discovery, and approximately four months after written discovery was due, after this case was ongoing for approximately *four years*. Moreover, what is abundantly clear is that the IDOC Defendants failed to supplement the record "in a timely manner," as required by Rule 26(e).

The Court appreciates the current IDOC Defendants' attorney's candor in explaining when she learned of these documents and how she produced them at once after they were disclosed to her. The IDOC Defendants explain that at Menard, incident reports are not kept in an individual's master file; rather, they are categorized by date and stored in the Assistant Warden's Complex (Doc. 302, p. 7). As none of the named Defendants were present for the events described in the incident report, they contend that they did not know it existed (Docs. 302, p. 7; 299-6).[3] IDOC Defendants' counsel explained that even though she believed relevant incident reports have been previously

---

[3] Plaintiff contends the IDOC Defendants had knowledge of this Incident Report for the entirety of this case, as it was signed by Kim Butler, a party Defendant (Doc. 299-5).

requested from Menard in this matter, she still requested the staff at Menard to search for any relevant incident reports on January 16, 2020 (Doc. 302, p. 6). On January 17, 2020, she received the relevant incident report and immediately forwarded it to Plaintiff's counsel the same day (Docs. 302, p. 7; 299-10; 299-5).

But this begs the question, which Plaintiff argued, that if the Documents were easily produced and provided to IDOC Defendants' counsel in *one day*, why weren't they produced over the first *four years* of this case? It is evident, then, from this fact that what was previously missing by the IDOC Defendants was a reasonable inquiry into the records pertinent to this case in accordance with FED. R. CIV. P. 26(g)(1)(A). Rule 26(g) does not require perfection, but it does require parties to be diligent and act in good faith. *See City of Rockford v. Mallinckrodt ARD, Inc.*, 326 F.R.D. 489, 492 (N.D. Ill. 2018). Regardless of the record-keeping systems at Menard, and how they have potentially changed over the course of this case, the IDOC Defendants should know these systems and be able to easily produce relevant documents for cases, as they did on January 16 and 17, 2020.[4]

Plaintiff also argues that in addition to the late-disclosed Documents, he was also harmed by the IDOC Defendants overly redacting relevant documents, including a Classification Report and a Cell House Transfer Log. The IDOC Defendants highlight that some of the redactions were simple errors, the result of disclosing 888 pages of records, that Defendants' counsel immediately corrected (Docs. 299-5; 299, p. 3; 302 p. 9). As for

---

[4] When this discovery dispute first began, Plaintiff sought to depose the IDOC's Litigation Coordinator, who may have been able to explain, or justify, the delay, but the IDOC Defendants objected to this and the Court determined this inquiry was not necessary at the February 25, 2020 hearing (Doc. 297; 299, p. 4).

redacting portions of the Cell Transfer Log and Classification Report, the IDOC Defendants made the decision to keep these records redacted per the Illinois Substance Abuse Act, which requires the record be kept confidential, even if the information is already possessed by the other side (Doc. 302, p. 11). Specifically, the IDOC Defendants believe the sections of the classification report that was redacted (*e.g.*, "crucial needs/concerns" and "reported medical/mental issues") should be kept confidential pursuant to 20 ILCS 301/30-5 (Doc. 302, p. 11).

The overly-redacted Documents seem less harmful to Plaintiff, on the whole, at this stage since the IDOC Defendants have attempted to correct some of these errors and seem amenable to correcting these redactions in the future. Additionally, there is a current Protective Order in this case that could cover some of these materials should they need to be disclosed (*See* Doc. 293). The redaction issues seem to be more-easily cured than the harm Plaintiff suffered as the result of the late-disclosed Documents as a whole. Even so, Plaintiff is correct that once these documents are properly redacted, they are likely to impact his case as the Documents relate directly to Plaintiff's central claims in this matter, which may require significant additional work and time to incorporate into Plaintiff's claims and theory of his case.

Overall, the IDOC Defendants failed to comply with Rule 26(a), 26(e), and 26(g) by untimely producing material evidence. "If a party fails to provide information or identify witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified or is harmless*." Fed. R. Civ. P. 37(c).

The Court has already discussed how the late disclosures of this evidence is harmful to Plaintiff. Additionally, IDOC Defendants themselves have acknowledged the lack of justification for the late disclosures (Doc. 299-10, p. 1, in which counsel states, "We do not know why the incident report was not previously produced."). To attempt to justify, or at least explain the late disclosures, the IDOC Defendants argue that they, along with their current counsel, should not be held responsible for the failure of a previous Defense counsel to obtain the Documents from the IDOC at an earlier time in the discovery process (Doc. 302, p. 7). But sanctions are issued against parties, not counsel, and both the party, and their counsel, are governed by the Federal Rules alike. *See generally Reddick v. Bloomingdale Police Officers,* 2003 WL 1733560, at *14 (N.D. Ill. 2003). As such, the Court finds that the IDOC Defendants violated discovery rules and as these violations are not harmless or justified, the violations warrant sanctions under Rule 37.

II.     Expert Disclosure Issue

Federal Rules of Civil Procedure require certain disclosures for both fact and expert witnesses before they are deposed. Expert witnesses are broken down into two categories: retained and non-retained experts. The disclosure of a retained expert witness also requires the disclosure of a written report containing information such as the opinions, facts, exhibits, qualifications, prior testimony, and compensation received by the witness. FED. R. CIV. P. 26(a)(2)(B). For a non-retained expert, there is no requirement that a report accompany the expert; rather, all that is required is a statement regarding the subject matter on which the witness is expected to testify and a summary of the facts and opinions to which the expert is expected to testify. *See* FED. R. CIV. P. 26(a)(2)(C). Rule

37(c)(1) provides the sanction for failing to comply with the witness disclosure requirements under Rule 26. The rule states as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).

The rule provides for mandatory and automatic exclusion unless the non-disclosure was justified or harmless. *See Musser v. Gentiva Health Services,* 356 F.3d 751, 758 (7th Cir. 2004). As explained below, the IDOC Defendants' non-disclosure was neither justified nor harmless.

As an initial matter, the parties disagree as to whether Defendant's expert, Mr. Keane, is a non-retained expert witness or should be classified as a retained expert to determine the applicable Rule 26 reporting requirements. Both Plaintiff and Defendants cite to the same case as support for their arguments, *Guarantee Trust Life Insurance v. American Medical*, which is instructive to determine the difference between retained and non-retained experts. "Non-retained experts must only testify about opinions that were formed during the course of their participation in the relevant events of the case, and only to those opinions which were properly disclosed." *Guarantee Trust Life Insurance v. American Medical,* 291 F.R.D. 234, 237 (N.D. Ill. July 26, 2013).   This means that non-retained experts may not testify to any opinions they developed later on or in anticipation of litigation. *Id.*

Generally, the issue of retained and non-retained experts appears in the context of medical experts; however, courts within this Circuit have held that this designation extends to other types of expert witnesses as well. *See Coleman v. American Family Mut. Ins. Co.*, 274 F.R.D. 641, 645 (N.D. Ind. June 2, 2011); *See generally, Avnet, Inc. v. Bsp Software, Inc.*, No. 12-cv-2100, 2016 WL 927194 (N.D. Ill. March 4, 2016); *Village of Bondville v. Windstream Corp.*, No. 13-cv-2078, 2015 WL 13608437 (C.D. Ill. April 13, 2015). The Northern District highlighted, in a similar issue to the present matter, that "a former employee may be a non-retained expert for the purposes of Rule 26(a)(2) if he is *a percipient witness* and is testifying based upon his *personal knowledge* of the facts or data at issue in the litigation." *Guarantee Trust*, 291 F.R.D. at 237 (internal citations omitted).

IDOC Defendants contend that Mr. Keane was properly disclosed as a non-retained expert, and, in accordance with Rule 26(a)(2)(C) [5], as he does not fit into the description of a retained expert as outlined in Rule 26(a)(2)(B)[6] (Doc. 302, p. 13). Further, IDOC Defendants argue that even if the Court finds that Mr. Keane's disclosure statement was insufficient, Plaintiff's counsel had the opportunity to depose him and, therefore, cured any "alleged insufficiencies" (Doc. 302, p. 13).

---

[5] Rule 26(a)(2)(C) includes specific information a non-retained expert must disclose prior to being deposed, including "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

[6] Under Rule 26(a)(2)(B), expert witnesses must be accompanied by a "written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

Plaintiff, on the other hand, explains that Mr. Keane has no personal knowledge of the underlying events and, therefore, cannot be a non-retained expert. Mr. Keane himself, during his deposition, admitted he has no personal knowledge of Plaintiff and the underlying events. For example, when asked if he had any opinions regarding Plaintiff or the March 2016 transfer, Mr. Keane responded with, "I did not have any opinions, no" (Doc. 299-13, p. 12). When asked if Mr. Keane was familiar with Plaintiff or knew that he existed, he explained that he did not know Plaintiff and that the day of his deposition was the first time he heard of Plaintiff (*Id.* at p. 19).

"Forming an opinion based on a review of documents and invoices after the fact is the province of a retained expert witness under Rule 26(a)(2)(B)." *LeBlanc v. Mr. Bult's*, Case No. 15 C 6019, 2019 WL 3776957, at *4 (N.D. Ill. Aug. 12, 2019) (citing *Vill. Of Bondville v. Windstream Corp.*, No. 13 C 2078, 2015 WL 13608437, at *4 (C.D. Ill. Apr. 13, 2015)). As such, it is clear to the Court that Mr. Keane, for purposes of the Federal Rules, is a retained expert that was improperly disclosed to Plaintiff, as he has no personal knowledge of the underlying events of this case or Plaintiff himself. In other words, the only knowledge Mr. Keane has of the facts and circumstances of this case was formed after the fact and in preparation to give a deposition. This is a classic example of a retained expert witness. Because the proper disclosures were not made, Mr. Keane's testimony and opinion is subject to automatic exclusion, unless the failure to disclose was either substantially justified or harmless. FED. R. CIV. P. 37(c)(1).

IDOC Defendants argue that even if Mr. Keane was incorrectly disclosed as a non-retained expert, Plaintiff did not suffer any harm, as he was put on sufficient notice of

Mr. Keane's expert opinion through the deposition and shortened witness disclosure statement (Docs. 302, pp. 14-15; 299-4; 299-13). Additionally, IDOC Defendants argue that Plaintiff should have immediately objected to the expert witness disclosure prior to conducting the deposition if Plaintiff believed Mr. Keane was improperly designated as a non-retained expert Doc. 302, p. 15). These arguments are unavailing.

As Plaintiff points out, because the IDOC Defendants refuse to concede that Mr. Keane was improperly disclosed, they have then offered no explanation or justification for the improper disclosure if the Court does not buy their premise. Plaintiff explains he was unable to determine important details required by Rule 26(a)(2)(B) at the deposition, including the basis and reasons for Mr. Keane's opinions, his qualifications, and other cases in which, during the previous four years, he testified as an expert at trial or by deposition (Doc. 299, pp. 13-14). For example, when asked the number of opinions he formed in this matter, Mr. Keane provided an evasive and nonsensical answer: "Well, I'm a singular person so I have a singular opinion" (Doc. 299-13, pp. 36-40). When asked whether he was a witness in other cases, Mr. Keane responded, "I can't recall at this time" (*Id.* at pp. 20-27).

Under Rule 37, "the sanction of exclusion [of a witness] is 'automatic and mandatory unless the party to be sanctioned can show that its violation ... was either justified or harmless.'" *NutraSweet Co. v. X–L Engineering Co.,* 227 F.3d 776, 785–86 (7th Cir.2000) (quoting *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir.1996)). The party facing sanctions has the burden of proving that its violation was either substantially justified or harmless. *Andrews*, 2011 WL 722606, at *1.

Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial. *Musser,* 356 F.3d at 757. The Seventh Circuit has held that a district court did not abuse its discretion in finding harm because the defendant "was denied the opportunity to question the witness in their expert capacity." *Id.* at 759. *See also Tribble v. Evangelides,* 670 F.3d 753, 760 (7th Cir. 2012) (noting prejudice in the failure to disclose an expert even though the plaintiff knew the witness was going to testify and knew the limit of the testimony); *Karum Holdings, LLC v. Lowe's Companies, Incorp.,* 895 F.3d 944, 952 (7th Cir. 2018) (rejecting the notion that "a Rule 26(a) violation [wa]s harmless simply because the opposing party knew the witness would testify in some capacity.").

This is the exact issue here. Plaintiff outlined that he suffered harm by this improper disclosure because he lacked necessary details about Mr. Keane's background that would have been provided in the appropriate report prior to his deposition; therefore, Plaintiff's questioning of Mr. Keane was dramatically impacted (Doc. 299, p. 13). The IDOC Defendants did not provide justification for this error or provide an explanation for why he was not properly disclosed; rather, they simply argued that any potential errors with disclosure of this witness were rehabilitated by Plaintiff's counsel being able to question him at the deposition, an argument not supported by precedent. Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel before the deposition as to what the expert witness will testify, and this purpose would be completely undermined if parties were allowed to cure deficient

reports with later deposition testimony. *See Sherrod v. Lingle,* 223 F.3d 605, 613 (7th Cir.2000); *Salgado v. General Motors Corp.,* 150 F.3d 735, 741 n. 6 (7th Cir.1998)   Allowing parties to cure a deficient report with later depositions would further undermine a primary goal of Rule 26(a)(2): "to shorten or decrease the need for expert depositions." *Salgado,* 150 F.3d at 741 n. 6. *See also Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 642 (7th Cir. 2008). As such, since the improper expert disclosure of Mr. Keane was harmful to Plaintiff and not justified, the IDOC Defendants are subject to Rule 37 sanctions.

### III.    Rule 37 Sanctions

Plaintiff contends that the IDOC Defendants' repeated discovery violations should be viewed in the aggregate and are indicative of the IDOC Defendants not taking their discovery responsibilities seriously (Doc. 303, citing *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011)) ("A district court may conclude that one more supposed miscommunication is just another example of a party's demonstrated inability to take his discovery obligations seriously.")). Plaintiff makes this argument to support his preferred remedy, which is to strike the IDOC Defendants' pleadings and enter judgment in favor of Plaintiff. While Plaintiff does present a pattern of concerning behavior with respect to the rules of discovery, the IDOC Defendants have also demonstrated some attempts at mitigating their blunders.

With a discovery violation established, the question turns to the appropriate sanction under Rule 37: If a party fails to provide information or identify a witness as required by Rule 26(a) or (e) the court may impose appropriate sanctions. FED. R. CIV. P.

37(c)(1). *Colyer v. City of Chicago, Gildardo Sierra*, No. 12 C 04855, 2016 WL 25710, at *15 (N.D. Ill. Jan. 4, 2016). Exclusion is an extreme and harsh remedy, and there is a general preference to determine a case on the merits. *See Duff v. Grandberry*, No. 14 CV 8967, 2017 WL 1375539, at *2 (N.D. Ill. Apr. 17, 2017). *See also Musser,* 356 F.3d at 759 ("In the normal course of events, justice is dispensed by the hearing of cases on their merits."). Therefore, "[a] Rule 37(c)(1) sanction 'must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction.'" *Doe 1 v. City of Chicago*, No. 18-CV-3054, 2019 WL 5290899, at *9 (N.D. Ill. Oct. 18, 2019) (citing *Weistock v. Midwestern Reg'l Med. Ctr.*, No. 07 C 1678, 2010 WL 1655449, at *3 (N.D. Ill. Apr. 23, 2010) (quoting *Salgado,* 150 F.3d at 740).

First, for the late-disclosed Documents, the Court is not convinced that the IDOC Defendants acted in bad faith. Certainly, there was an extreme and harmful delay in producing critical documents that is likely the result of a prior, hastily conducted inquiry into the documents within the control of the IDOC Defendants. But Courts have found in favor of more drastic sanctions when there is evidence of attorney misconduct. *See generally Colyer,* 2016 WL 25710, at *16. But that isn't the case here, at least with present counsel.

On the other hand, the IDOC Defendants produced what are arguably some of the most relevant and pertinent documents to Plaintiff's case just one week before the close of discovery. The intent behind Rule 26 is to allow parties to prepare for trial, avoiding unnecessary surprises throughout this preparation. Additionally, Rule 37(a)(4) finds that evasive or incomplete disclosures must be treated as a failure to disclose. *See* FED. R. CIV.

P. 37(a)(4). As such, at least for a significant portion of this case, the IDOC Defendants did not make reasonable inquiries into their documents, which resulted in incomplete disclosures to Plaintiff. While the current counsel has attempted to remedy those past failures, these prior errors (which occurred before current counsel's involvement) are still worthy of sanctions.

To strike the balance between the parties' arguments and recognizing the IDOC recent attempts at righting past discovery wrongs, the Court will reopen and extend discovery to allow for the parties to use the Documents at issue, with the following parameters:

I.     Redactions

The parties are ordered to meet and confer, and determine whether the current Protective Order (Doc. 293) or an additional HIPAA Protective Order is necessary for the IDOC Defendants to produce certain Documents that Plaintiff contends are currently overly-redacted. The parties are encouraged to consider whether an attorneys'-eyes only designation will assist in the exchange of this information. If, after meeting together, the parties are unable to find a workable path forward, the IDOC Defendants will be required to produce a privilege log to Plaintiff. *See* FED. R. CIV. P. 26(c)(5). The privilege log shall generally describe the nature of the information redacted, but do so in a manner that, without disclosing the purportedly privileged information, allows the Plaintiff to assess the claim of privilege. If, after the privilege log has been produced and reviewed and a dispute remains, the parties may request an in-camera review from the Court. However, if the Court deems the documents to be reviewed as excessive, the parties are cautioned

that the Court will require the development of categories or topics and representative documents from each category or topic for the Court's consideration. On the issue of the redactions, the parties are **ORDERED** to submit a joint status report updating the Court on the progress of this no later than **April 13, 2021**.

## II.     Reopening Discovery

The Court will reopen discovery for the limited purpose of deposing the six late-disclosed witnesses. However, the Court does have concerns as to whether all of this testimony is truly needed and suspects that there may be a great deal of duplicative testimony. To that end, the Court does not believe the full seven hours for each witness is necessary here. *See* FED. R. CIV. P. 30(d) (deposition duration is limited to one day of seven hours, unless otherwise stipulated or ordered by the court). Plaintiff will be granted twenty-four (24) hours to conduct depositions of these six witnesses, to be allotted in any way Plaintiff deems appropriate (however no one witness may exceed seven hours). The IDOC Defendants will be responsible for the costs associated with these depositions, including court reporter fees, fees for copies of documents, and *reasonable* attorneys' fees. At this time, the Court is not inclined to reopen discovery to allow for the redeposition of any other witness. The Court is unsure whether it is necessary to reopen expert discovery to allow Plaintiff's expert to supplement the report and whether any additional deposition is necessary. However, the Court believes the prudent course of action on this is to defer consideration of this issue until after the six witnesses have been deposed, and then determine, at that time, whether any additional expert discovery will be permitted and who shall bear that cost.

After the parties conduct these depositions, Plaintiff will have the opportunity to file a fee application with the Court, which the IDOC Defendants will be permitted to respond to as well. Upon receipt of the fee application, and response, the Court will still assess the reasonableness of Plaintiff's requested costs and fees.

Depositions of these six witnesses shall occur by **June 16, 2021**.

Should the Plaintiff seek to file an amended complaint based on the information contained in the redacted documents, the parties shall meet and confer, before filing any such motion with the Court.

III.     The IDOC Defendants' Expert, Mr. Keane

As for IDOC Defendants' expert, Mr. Keane, if the Court allowed the IDOC Defendants to present Mr. Keane as a retained expert at this point, after having not complied with the Federal Rules, it would lower the bar for other experts and "undermine the necessity of following the Federal Rules." *Hess v. White Castle Sys. Inc.*, Case No. 19-cv-274-RJD, 2020 WL 1529533 (S.D. Ill. March 31, 2020). As such, the Court finds exclusion to be the appropriate remedy, and Mr. Keane's testimony will be excluded.

## CONCLUSION

Plaintiff's motion for sanctions is **GRANTED in part and DENIED in part** (Doc. 299). With respect to the redactions, the parties are **ORDERED** to follow the process provided *supra* and submit a status report updating the Court no later than **April 13, 2021.** With respect to the late-disclosed witnesses, discovery is **REOPENED** for the limited purpose of deposing these six witnesses. Plaintiff is allotted **twenty-four (24) hours total**

to conduct depositions of these witnesses to be allotted in any way Plaintiff deems appropriate (but no single deposition may exceed seven hours). Upon the conclusion of these depositions, Plaintiff will file a fee application with the Court, IDOC Defendants will have the opportunity to respond and the Court will assess costs and reasonable attorney's fees. The depositions must be **COMPLETED before June 16, 2021**. The Court defers consideration of whether to permit any additional expert discovery until the aforementioned discovery is complete.

Finally, Mr. Keane is hereby **STRICKEN** as a retained or non-retained expert witness in this case and he is precluded from offering any testimony in this case. Discovery will be **REOPENED** for in accordance with the aforementioned parameters.

This case will be set for a status conference by separate notice to discuss the schedule outlined by the Court. If the parties determine that an additional settlement conference would be necessary, they should notify the Court so that the matter can be committed for mediation.

**IT IS SO ORDERED.**

**DATED: March 16, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**